IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   11-cv-01363-WYD-CBS

DENISE HETTINGER f/k/a DENISE SEYBOLD,

    Plaintiff,

v.

JOHN B. COOKE, individually and in his official capacity as Weld County Sheriff,

    Defendant.

# ORDER

## I.    INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss filed on September 8, 2011.  A response was filed on November 22, 2011, and a reply was filed on December 7, 2011.  The motion is fully briefed.  For the reasons stated below, Defendant's Motion to Dismiss is granted in part and denied in part.

## II.    FACTUAL BACKGROUND

Plaintiff, a 44 year old female, was hired on July 1, 1988, by then Weld County Sheriff Ed Jordan, the Defendant's predecessor, and was continuously employed by the Weld County Sheriff's Office ("WCSO") for more than 20 years.  (First Am. Compl. ["Compl."], ¶¶ 5, 11.)  Plaintiff's last position with the WCSO before her termination was as a correctional officer.  (*Id.* ¶ 11.)

Defendant is the current Sheriff of Weld County.  (Compl. ¶ 7.)  In his capacity as the Weld County Sheriff, Defendant acts and serves as the sole or primary statutory

operator and administrator of the Weld County Jail and the WCSO, and is the statutory employer of all employees thereof. (*Id.* ¶¶ 8, 9.)

Until 2005, when Plaintiff began to complain of discrimination and preferential treatment in the promotion process of the Weld County Sheriff's Office ["WCSO"], Plaintiff's work evaluations were exemplary. (Compl. ¶ 13.) Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ["EEOC"] in 2006, arising from her inability to obtain a promotion to the position of Commander. (*Id.* ¶ 16.) Upon receipt of a Notice of a Right to Sue, Plaintiff filed her first lawsuit against Defendant in this Court, Civil Action No. 08-cv-00916-DME-MJW.

That lawsuit, filed in May of 2008, asserted claims of disparate treatment, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ["Title VII"], retaliation for speech protected by the First Amendment, violation of due process and equal protection under the Fourteenth Amendment, retaliation by "false detention" in violation of the Fourth and Fourteenth Amendments, and retaliatory interference with medical benefits in violation of the Employee Retirement Income Security Act. All of these claims arose from Plaintiff's employment with the WCSO. (*See* Pl.'s "Corrected and Amended" Second Am. Compl. and Jury Demand, ECF No. 127 in Case No. 08-cv-00916-DME-MJW.) On February 23, 2010, Judge Ebel granted summary judgment in favor of Defendant in that lawsuit. (*See* Order Granting Defendant's Motion for Summary Judgment, ECF No. 278.) Plaintiff did not appeal the order of dismissal.

Plaintiff asserts in this case that from the time of the first lawsuit on, she "was subjected to various and sundry forms of ongoing or periodic retaliation, recrimination,

and workplace hostility." (Compl. ¶¶ 51, 83.) Also, Plaintiff was terminated from her job with the WCSO during the pendency of her first lawsuit (*id.* ¶ 84), although the parties agree that Plaintiff's termination was not at issue in that case. The termination letter sent to Plaintiff stated that a report of a psychologist hired by the WSCO "indicates that you are not psychologically fit to return to your position at the Weld County Sheriff's Office." (*Id.* ¶¶ 73-74.)

Plaintiff alleges in regard to her termination that by October 15, 2008, she was on the verge of a nervous breakdown caused by Defendant's acts and was compelled to take a forced medical leave of absence. (Compl. ¶ 58.) While Defendant asserts that Plaintiff did not return from her medical leave of absence after more than six months, beyond the term required by the Family and Medical Leave Act, Plaintiff alleges that she had accumulated large amounts of medical and personal leave that were denied to her by Defendant. (*Id.* ¶ 65.) She asserts that her requests for sick leave were denied, as Defendant falsely alleged that she did not have any remaining benefits. (*Id.* ¶¶ 65-66.)

On May 5, 2009, Plaintiff's roommate was served with a letter notifying Plaintiff of a pre-termination hearing scheduled for the next day. (Compl. ¶ 69.) At the hearing on May 6, 2009, Plaintiff asserts that she did not have an opportunity to respond to the charges or the substance of the psychologist's report that formed the basis for her termination, and her supervisor was not present at the hearing. (*Id.* ¶¶ 71-72.) She also did not receive a copy of the psychologist's report prior to the hearing despite a request by her and her counsel. (*Id.*) Plaintiff also alleges that the psychologist admitted that he did not rely on testing but on statements of WCSO personnel who had

previously held Plaintiff against her will in 2008, and that she was never given an opportunity to request separate objective psychological testing to rebut the WCSO psychologist's report.  (*Id.* ¶¶ 72, 73.)  Plaintiff alleges that she was pretextually terminated on the basis of an actual or perceived disability, while certain other WCSO personnel were treated preferentially and accommodated as required by the Americans with Disabilities Act ["ADA"].  (Id. ¶ 76.)

The Complaint alleges that after years of trying to cope with an abusive, threatening, intimidating, and recriminatory hostile work environment, Plaintiff remains on medication but cannot afford much needed counseling to deal with that or with the loss of a long-term career in law enforcement.  (Compl.¶ 79.)  Plaintiff also has not been able to find comparable work.  (*Id.* ¶ 80.)  Thus, Plaintiff alleges that her ability to work in her chosen profession has been irreparably impaired.  (*Id.*)  In addition, Plaintiff alleges that she has suffered irreparable financial harm from the loss of her 20 plus year law enforcement career.  (*Id.*)

Plaintiff filed a second Charge of Discrimination with the EEOC relating to her termination.  Plaintiff received a Dismissal and Notice of Rights from the EEOC on February 22, 2011, and initiated this lawsuit with her original Complaint and Jury Demand on May 23, 2011.

The First Amended Complaint in this case asserts a due process claim relating to Plaintiff's termination from government employment (first claim), retaliation under the First Amendment based on unspecified speech (second claim), retaliation and/or hostile work environment under 42 U.S.C. ¶ 1983 and/or Title VII (also in the second claim), a

claim for disability discrimination under the ADA and the Colorado Anti-Discrimination Act (third claim), and a sex discrimination claim under Title VII (fourth claim).

III.   ANALYSIS

Defendant argues that the claims already disposed of in the 2008 lawsuit are barred by the doctrines of collateral estoppel and res judicata.  He further argues that the remaining allegations and claims fail to demonstrate any violation of any of the laws relied upon, and that all of her claims should be dismissed as a matter of law.  I first address the standard of review and then turn to Defendant's arguments.

   A.   Standard or Review

When a motion is made to dismiss claims under Fed. R. Civ. P. 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Jordan-Arapahoe, LLP v. Bd. of Comm'rs of Cnty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011).  "To survive a 12(b)(6) motion to dismiss, a plaintiff must allege that 'enough factual matter, taken as true, [makes] his claim for relief ... plausible on its face.'"  *Id.* (quotation and internal quotation marks omitted).  "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940 (2009)).

Plaintiff "must include enough facts to 'nudge[] [her] claims across the line from conceivable to plausible.'"  *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory

allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

### B. Whether Dismissal is Appropriate

#### 1. Res Judicata

Defendant first argues that Plaintiff's claims and allegations in this case that were alleged in the previous lawsuit and dismissed by the Court are barred from relitigation here under the doctrine of res judicata. "Pursuant to the doctrine of res judicata, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008) (quoting *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002)). "It is designed to ensure the finality of judicial decisions." *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1237 (10th Cir. 1992).

Res judicata, or claim preclusion, "applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.'" *Pelt*, 539 F.3d at 1281 (quoting *MACTEC Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)). Additionally, where appropriate, the courts have looked at a fourth factor: (4) whether the plaintiff had a full and fair opportunity to litigate the prior suit. *Nwosun v. Gen. Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997); *see also Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n. 4 (10th Cir. 1999).

In this case, there clearly was a final judgment on the merits in the first lawsuit, as the Court granted Defendant's Motion for Summary Judgment. There also is an

identity of parties in the two suits. Plaintiff does not dispute these findings. I also find that Plaintiff had a full and fair opportunity to litigate her first suit, as evidenced by the fact that she was allowed to amend her complaint twice and respond to the motion for summary judgment. *See Park Lake Res. Ltd. Liab. v. U.D. Dep't of Agriculture*, 378 F.3d 1132, 1135-36 (10th Cir. 2004) ("'A party who has had a full opportunity to present a contention in court ordinarily should be denied permission to assert it on some subsequent occasion.'") (quotation omitted). Again, Plaintiff does not dispute this.

The only real question is whether there is an identity of claims in the two lawsuits. I find that this element is satisfied as to allegations in the initial lawsuit that have been raised anew in this lawsuit related to the employment claims. The First Amended Complaint in this lawsuit contains many of the same allegations that were at issue in the employment and other claims in the first lawsuit and addressed by the Court's Summary Judgment Order. Thus, the complaints in both cases alleged employment incidents in 1988 and then in 1997, continuing through Plaintiff's efforts to secure a promotion to commander from 2002 to 2006, and additional alleged acts of discrimination and/or retaliation from 2005 through 2009, when Plaintiff was denied sick leave benefits. (Compare ¶¶ 19-68 and 83 of the First Amended Complaint in this lawsuit with ¶¶ 8-85 in the Second Amended Complaint in the first lawsuit.)

Plaintiff argues in response that Defendant should not be permitted to argue the doctrine of res judicata based on her 2008 lawsuit because this argument relies on the pleadings from that lawsuit, the attachment of which would require conversion of Defendant's motion to a motion for summary judgment. I reject this argument. First, I

can consider the complaint from the first lawsuit in 2008 because it is referred to and relied on in Plaintiff's Complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). It is also appropriate for me to take judicial notice of the pleadings from the 2008 case, including the order granting summary judgment in favor of Defendant, regardless of whether Defendant made a request for such notice. My consideration of the case does not require that Defendant's motion be converted into a motion for summary judgment. *See Merswin v. Williams Cos., Inc.*, No. 09-5096, 2010 WL 373672, at * 2 (10th Cir. Feb. 3, 2010) (unpublished) (citing *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361-62 (10th Cir. 2008)); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

Plaintiff also argues that acts prior to the 300-day statutory filing period for a Charge of Discrimination can be considered if part of the same actionable hostile work environment practice, citing *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101 (2002) and subsequent statutory amendments. This argument is without merit, as Judge Ebel already considered Plaintiff's discrimination, retaliation, and hostile work environment claims based on the facts alleged in the first lawsuit and specifically rejected those claims. The ongoing violation theory does not allow a plaintiff to relitigate issues already decided by the federal courts. *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970) ("[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."). Further, Plaintiff fails to explain how the actions going back to 1988 are part

of her disability discrimination claim, particularly given that Plaintiff was not at work during the time period she claims to have been disabled.[1]

Accordingly, I agree that all allegations related to Plaintiff's employment claims that were raised and decided in the prior suit are barred by the doctrine of res judicata. The doctrine of res judicata does not apply, however, to Plaintiff's termination from employment or to actions of the Defendant regarding the pre-termination hearing upon which Plaintiff's due process claim is based, since those issues were not decided in the 2008 case. It also does not apply to any other allegations in this lawsuit that were not alleged previously. Accordingly, res judicata requires only a dismissal of the case in part. Thus, I turn to Defendant's other arguments for dismissal.

2. The Due Process Claims

Plaintiff's first claim, entitled "Liberty and Property Rights", alleges that she was terminated from her job in violation of her due process rights. The complaint does not specify whether she is alleging a substantive or procedural due process claim, but Plaintiff's response addresses both claims. Thus, I assume that both claims have been raised by Plaintiff. I now turn to my analysis of those claims.

a. Substantive Due Process

The United States Constitution guarantees due process only when a person is deprived of life, liberty, or property. *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). "'The touchstone of due process is protection of the individual against arbitrary

---

[1] Plaintiff also purports to rely on the Lily Ledbetter Fair Pay Act, which relates to the time limit for filing claims of discriminatory compensation decisions. *See* 42 U.S.C. §2000e-5(e)(3)(A). However, there is no allegation of a discriminatory compensation decision in this case.

-9-

action of government,' . . . whether the fault lies in a denial of fundamental procedural fairness,. . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective . . . ."" *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (internal quotations omitted).  To establish a substantive due process violation, "a plaintiff must show that the [defendant] acted in a manner 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009) (quoting *Lewis*, 523 U.S. at 847, n. 8.)  The court's "concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscious shocking." *Lewis*, 523 U.S. at 850.

As to public employees, the Tenth Circuit holds that "[a] public employee with a property interest in continued employment has a substantive-due-process right not to be terminated for arbitrary or capricious reasons." *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1257 (10th Cir. 2007).  Here, Plaintiff has alleged that she has a property interest in continued employment as a corrections officer.  (Compl. ¶ 109.)  Thus, I must determine whether Plaintiff has shown that her termination was "arbitrary, irrational, or shocking to the contemporary conscience."  *Darr*, 495 F.3d at 1257.  This standard must be satisfied as "'[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.'"  *Curtis v. Okla. City Pub. Sch. Bd. of Educ.,* 147 F.3d 1200, 1215 (10th Cir. 1998) (quotation omitted).

I find as a matter of law that Plaintiff's termination and the events leading up to it were not arbitrary, irrational or conscience shocking.[2] Even if I assume for purposes of the motion to dismiss that Defendant had "'a culpable mental state'" in connection with wanting to terminate Plaintiff,[3] that "'alone, is insufficient to establish a violation of substantive due process.'" *Green v. Post*, 574 F.3d 1294, 1303 (10th Cir. 2009). Instead, Plaintiff acknowledges that Defendant's decision to terminate Plaintiff was based on a psychologist's opinion that she was unfit for duty. I find that is not an arbitrary or irrational basis to terminate a corrections officer such as Plaintiff, and is not so egregious or outrageous as to be conscience shocking.

Plaintiff also asserts that during the post-termination hearing in the instant case, Defendant admitted that there were no policies or procedures or standards with regard to the "unfit for duty" rule. She argues that Defendant's determination that Plaintiff was "unfit for duty" was not a reasonable method of accomplishing the desired objective of a police force fit for duty. She also appears to argue that the "unfit for duty" rule is vague and that Defendant's determination led to "a resolution on a subjective basis which resulted in an arbitrary and discriminatory application", citing *Grayned v. City of Rockford*, 408 U.S. 104 (1972). This argument also fails. Plaintiff did not allege in the complaint that this so-called "rule" was constitutionally vague, and *Grayned* applies only

---

[2] While this claim may arguably encompass Plaintiff's allegations that Defendant created a hostile work environment and acted unlawfully towards her for years, allegations that were raised in the previous suit were dismissed in the previous section by the doctrine of res judicata and will not be considered.

[3] Plaintiff asserts on that issue that Defendant's animus toward her was evident as early as 1988 when he told Plaintiff during an internal affairs investigation that ". . . she was a liar and he would have her job." (Pl.'s Resp. to Def.'s Mot. to Dismiss Pl.'s First Am. Compl. [hereinafter "Resp. Br."] at 8.)

to a vagueness claim, not a substantive due process violation. Further, I find that Plaintiff has not shown that any post-termination procedure was arbitrary, irrational or conscience shocking.

Alternatively, even if I were to conclude that Plaintiff could establish a constitutional violation under the deliberate indifference standard, I find that Defendant would be entitled to qualified immunity because the law was not clearly established at the time of the incidents in question. *See Green*, 574 F.3d at 1304. "A right is clearly established when, at the time of the alleged violation, 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Riggins v. Goodman*, 572 F.3d 1101, 1111 (10th Cir. 2009) (quotation omitted). Plaintiff has not shown that the constitutional right she asserts was clearly established by cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits. *Id*. Further, she has not demonstrated "'substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'" *Id*. (quotation and internal quotation marks omitted).

Based on the foregoing, I find that Defendant's Motion to Dismiss must be granted as to the substantive due process claim.

      b. <u>Procedural Due Process</u>

"To 'assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the

individual afforded an appropriate level of process.'" *Riggins*, 572 F.3d at 1108 (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir.2004) (internal quotation marks and citation omitted). Since Plaintiff has alleged that she has a protected property interest in her employment, I turn to the issue of whether Plaintiff received the level of process to which she was entitled to protect that interest.

"'An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Riggins*, 572 F.3d at 1108 (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (internal quotation marks omitted). "'[T]he root requirement'" of the Due Process Clause is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Id.* (quoting *id.*) (emphasis in original). This requires "'some kind of a hearing'" prior to the discharge of an employee with a constitutionally protected property interest in her employment. *Id.* (quoting *id.*) (internal quotation marks omitted).

"For government employees, such a hearing requires: (1) 'oral or written notice [to the employee] of the charges against h[er]'; (2) 'an explanation of the employer's evidence'; and (3) 'an opportunity [for the employee] to present h[er] side of the story.'" *Id.* (quoting *Montgomery,* 365 F.3d at 936). "'A full evidentiary hearing is not required prior to an adverse employment action.'" *Id.* (quotation omitted). "Instead, the 'individual entitled to due process protection needs only to be given notice and an opportunity to respond.'" *Id.* (quotation omitted). "The objective of the process is 'an initial check against mistaken decisions-essentially, a determination of whether there

are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *Id.* (quotation omitted).

I find that the motion to dismiss should be denied as to the procedural due process claim.  While it is undisputed that Plaintiff received advance written notice of the charges against her, Plaintiff alleges that she did not have an opportunity to respond to the charges or the substance of the evidence against her, *i.e.*, she asserts that she did not have an opportunity to present her side of the story at the pre-termination hearing. While Defendant may dispute these allegations, I must accept them as true at this stage of the litigation.

Further, Plaintiff has made allegations of bias against both Defendant and the WCSO psychologist who issued the report that formed the basis for her termination. Plaintiff alleges in that regard that Defendant retained his "longterm pal" as the psychologist to issue a report that was "predetermined."  (Compl. ¶ 84.)  She also asserts that Defendant's animus toward the Plaintiff was evident as early as 1988 when he told her during an internal affairs investigation that "…she was a liar and he would have her job."  (Resp. Br. at 8.)  Plaintiff further alleges that the psychologist's report was "erroneous and biased" and "bogus", and that the psychologist admitted he did not rely on the test results but on statements of "Defendant's loyalist Commanders Ryan and Tuttle."  (Comp. ¶¶ 70, 72-73, 84.)  "Impartiality of the tribunal is an essential element of due process."  *Riggins*, 572 F.3d at 1112.  While I recognize that Plaintiff must make a "substantial showing of personal bias", *id.*, I find that this is an issue that is better resolved on the evidence.

### 3. First Amendment Claim

Plaintiff appears to acknowledge that her Second Claim for Relief entitled "42 U.S.C. §1983" is a claim for retaliation in connection with protected speech under the First Amendment to the United States Constitution. To determine whether a public employer's actions impermissibly infringe on free speech rights, the Tenth Circuit applies "the four-prong test articulated in *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)." *Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1286 and n.7 (10th Cir. 2003). Under this test, the employee must first demonstrate (1) that the speech touches on a matter of public concern, (2) that the employee's interest in commenting on matters of public concern outweighs the interest of the state in promoting the efficiency of the public service it performs through its employees, and (3) that the protected speech was a substantial or motivating factor behind the adverse employment decision. *Id.* at 1286 n. 7. If these three factors are met, the burden shifts to the employer to establish that it would have reached the same decision in the absence of the protected conduct. *Id.*

In response to Defendant's argument that Plaintiff identified no protected speech other than her Charge of Discrimination, Plaintiff asserts that her protected speech consists of "grievances, complaints, Charges of Discrimination and action thereon," citing to 55 paragraphs from her Complaint. (Response at 15.) Even if I accept that these allegations relate to protected speech and that they were not dismissed under the doctrine of res judicata, I still find that this claim must be dismissed under Rule 12(b)(6). Plaintiff has still not shown or even made any attempt to show: (1) that these

complaints or any other purported activity touched on a matter of public concern, (2) that her interest in commenting on matters of public concern outweighed the interest of the state in promoting the efficiency of the public service it performs through its employees, and (3) that the protected speech was a substantial or motivating factor behind the decision to terminate her employment.  Accordingly, the motion to dismiss is granted as to the First Amendment claim asserted in the second claim for relief.

### 4. Disability Discrimination Claim

Plaintiff's third claim, entitled "ADA and Colorado Anti-Discrimination Act", alleges that Plaintiff "suffered from and was afflicted by an increasingly more severe major depressive or mood disorder and anxiety attacks. . . ." (Comp., ¶ 110.)  Plaintiff alleges she was "pretextually terminated on the basis of [her] actual or perceived disability, while certain other WCSO personnel (such as Edwin Herring) were treated preferentially, and not terminated, but rather were accommodated, as required by the ADA." (*Id.* ¶ 76; *see also* ¶¶ 122, 125.)  She further asserts that ". . . Defendant had numerous WCSO positions available to accommodate the Plaintiff and to allow her to recover from her depressive or mood disorder without being further subjected to the hostile environment.  But, the Plaintiff was never given an opportunity to request an accommodation, as required by the ADA, and Defendant never attempted to enter into any interactive process therefor, as also required thereby." (*Id.*, ¶ 77, *see also* ¶ 124.)

Essentially, Plaintiff argues in connection with her employment termination that Defendant failed to reasonably accommodate her disability.  I find that the motion to dismiss should be granted as to this claim.  As explained by the Tenth Circuit, "'[t]he

federal regulations implementing the ADA envision an interactive process that requires participation by both parties'" when reasonable accommodation is at issue. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011) (quoting *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir.2004)); *see also* 29 C.F.R. § 1630.2(o)(3). "However, before an employer's duty to provide reasonable accommodations—or even to participate in the "interactive process"—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *Id.* (citing *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999) ("In general, the interactive process must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations....")).

Plaintiff recognizes this principle in her response, but argues that she "was never given the option to request an accommodation" because Weld County's "Human Resource person" "would not return her calls." (Response at 12). I find that this was not an adequate attempt to request accommodation. As noted by the Third Circuit, "either by direct communication or other appropriate means, the employee must make clear that [he/she] wants assistance for *his or her disability.*" *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3rd Cir. 2010) (emphasis added) (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3rd Cir. 2000)). The request for accommodation must be sufficiently direct and specific, giving notice that she needs a special accommodation. *Calero–Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 23 (1st Cir.2004). *Colwell* and *Calero-Cerezo* were both cited with approval by the Tenth Circuit in the *C.R. England* case. 644 F.3d at 1049.

In the case at hand, Plaintiff does not actually allege that she ever made any effort to request an accommodation. Even if she called the "Human Resource person" with the intention of requesting an accommodation (which she does not assert), this does not demonstrate that she made clear to Defendant "by direct communication or other appropriate means" that she was disabled and requested an accommodation. She does not explain why she could not have left a message, sent an email, or called her direct supervisor to request accommodation. She also does not explain why her attorney, who represented her before her medical leave, could not have contacted the County to request accommodation. Accordingly, the motion to dismiss is granted as to the ADA claim.

### 5.    Disparate Treatment

It is unclear what the basis of Plaintiff's final claim is, entitled "Disparate Impact and Treatment." Plaintiff asserts in her response that her claims relate to the ADA and her disability. (Response at 13.) This claim was previously addressed and dismissed in Section III.B.4, *supra.* To the extent Plaintiff may be stating a retaliation claim, it appears that her allegations were addressed in the previous lawsuit.

Plaintiff also may be asserting a disparate treatment and/or disparate impact claim based upon her gender. As to the disparate treatment claim based on gender, I note that Plaintiff did not allege that she was terminated based on her gender. Further, she has failed to show that her termination "occurred under circumstances which give rise to an inference of gender discrimination", or that Defendant's "proffered justification" for the termination is "so weak, implausible, inconsistent, or incoherent that a

reasonable factfinder could rationally find it unworthy of credence." *Luster v. Vilsack*, 667 F.3d 1089, 1096 (10th Cir. 2011).

Plaintiff has also not demonstrated a viable disparate impact claim. She failed to plead or show "'that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group.'" *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1193 (10th Cir. 2006). In the context of this case, it is not enough for Plaintiff to show simply that men were provided sick leave payments or longer medical leave than women, or that women's medical benefits were cancelled more than men's benefits. (*See* Resp. Br. at 13-14.) She "must compare *qualified* men to *qualified* women", showing for example that "among men and women who are eligible" for medical or sick leave benefits, men are granted benefits more than women. *Carpenter*, 456 F.3d at 1194. Plaintiff has not made such a showing in this case.

Based on the foregoing, Defendant's motion is granted as to the fourth claim.

IV. CONCLUSION

In conclusion, for the reasons stated herein, it is

ORDERED that Defendant's Motion to Dismiss (ECF No. 25) is **GRANTED IN PART AND DENIED IN PART**. It is **DENIED** as to Plaintiff's procedural due process claim and **GRANTED** as to all other claims.

Dated: June 7, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge